# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

JOLICIA RHODES )
)
    v. )     **Case No. 3:25-cv-01123**
)
NATIONAL GENERAL INSURANCE )
COMPANY (ALLSTATE) *et al.* )

**TO:**    **Honorable Aleta A. Trauger, United States District Judge**

### R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered November 4, 2025 (Docket Entry No. 7), the Court referred this *pro se* case to the Magistrate Judge for pretrial proceedings under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure.

Presently pending is the motion to dismiss and compel arbitration filed by Defendant National General Insurance Company (Docket Entry No. 14). The motion is opposed by Plaintiff. For the reasons set out below, the undersigned respectfully recommends that the motion be **GRANTED**, that arbitration be compelled, and that this lawsuit be dismissed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Jolicia "Jo" Rhodes ("Plaintiff") is a resident of Mt. Juliet, Tennessee. On October 1, 2025, she filed this lawsuit against National General Insurance Company (Allstate) ("National General") and three National General employees – Joseph Taylor, Demi Leigh Steward Risso, and Alex Koziol. *See* Complaint (Docket Entry No. 1). Although Plaintiff's complaint is largely couched in general allegations with few specific, factual allegations, she contends that she is, or was, an employee of National General and that she experienced workplace discrimination and

retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). *Id.* at 6.[1] Demanding a jury trial and asserting federal question jurisdiction, she seeks compensatory damages, punitive damages, back and front pay, and equitable relief. *Id.* at 5 and 7.

In lieu of an answer, National General filed the pending motion to dismiss this case and to compel arbitration of Plaintiff's claims.[2] National General argues that Plaintiff electronically signed a Mutual Arbitration Agreement ("MAA") on two occasions via the Workday electronic human resources recordkeeping system used by National General. *See* National General's Memorandum in Support (Docket Entry No. 15). National General contends that the MAA requires her to arbitrate her employment claims outside of litigation and that arbitration of her claims should be compelled because her claims fall within the scope of the MAA. In support of its motion, National General relies on: (1) the declaration of Rebecca Ly, a Human Resources Workforce Relations Manager with National General (Docket Entry No. 14-1); (2) a copy of the MAA (Docket Entry No. 14-2); and, (3) a copy of a computer spreadsheet containing what National General asserts is Plaintiff's electronic signature to the MAA (Docket Entry No. 14-3).

Plaintiff responds in opposition to the motion, disputing that she knowingly, voluntarily, and intentionally executed the arbitration agreement and contending that the MAA should not be enforced. *See* Response (Docket Entry No. 17). Plaintiff provides her own declaration, in which

---

[1] It is unclear from the complaint or the record whether Plaintiff is currently employed by National General.

[2] The three individually named Defendants do not appear to have been properly served with process, have not appeared in the case, and are not a part of the motion filed by National General.

2

she asserts that: (1) she does not "recall being presented with an arbitration agreement as a standalone document, nor do I recall affirmatively agreeing to arbitrate employment-related disputes;" (2) she disputes "the circumstances, timing, and voluntariness" of the execution of the MAA; (3) the consequences of agreeing to arbitration, the loss of jury trial rights, and the loss of her ability to litigate claims in court were not explained to her; (4) she does "not recall being given any opportunity to review, negotiate, opt out of, or ask questions about arbitration;" and, (5) she was suffering from serious medical conditions, on intermittent medical leave, and actively seeking workplace accommodations related to her medical conditions at the time she is alleged to have executed the MAA. *See* Plaintiff's Declaration (Docket Entry No. 17-1). Plaintiff further contends that the MAA is unconscionable and that, at a minimum, factual questions exists on the issue of the enforceability of the arbitration agreement that should permit the opportunity for limited discovery prior to a ruling on the motion. *See* Response at 7.

In reply, National General points out that Plaintiff does not actually contend that she did not electronically sign the MAA and argues that her assertion that she did not knowingly and voluntarily execute and assent to the MAA is not sufficient to avoid enforcement of the MAA. *See* Reply (Docket Entry No. 18). National General argues that: (1) there is no support for Plaintiff's assertion that the MAA is unconscionable; (2) Plaintiff was fully in control of her electronic review of the MAA; and, (3) Plaintiff executed two versions of the MAA during her employment. *Id*. at 4-5. National General maintains that, given the record that is before the Court, any questions or ambiguities that exist should be resolved in favor of arbitration.

Subsequent to the reply filed by National General, Plaintiff filed a "motion for limited discovery regarding arbitration formation." *See* Motion (Docket Entry No. 19). In the motion,

Plaintiff both (1) requests that she be permitted to take limited discovery from National General to obtain information about the Workday system, IP address, device, and session dates, all version of the MAA, and HR policies and training materials pertaining to the arbitration agreements and (2) presents additional arguments in support of her response in opposition to National General's motion. National General opposes Plaintiff's motion, arguing that it is an unauthorized sur-reply, a filing which the Court's briefing order (Docket Entry No. 16) specifically prohibits. *See* National General's Response (Docket Entry No. 20). With respect to Plaintiff's request to be permitted to take discovery prior to resolution of the motion to dismiss and to compel arbitration, National General argues that Plaintiff has not shown the existence of factual disputes that warrant permitting such discovery.

## II. THE MAA

The arbitration agreement at issue is set out in the MAA, which is attached as Exhibit A to the Declaration of Rebecca Ly. *See* Docket Entry No. 14-2. The MAA provides for an arbitration process before a "single arbitrator in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA")" as a means to settle disputes that are not resolved informally and sets out the procedures and rules for such arbitration. *Id*. at Section 9. The first section of the MAA states:

> **Mutual agreement to arbitrate.** Except as noted below, you agree to arbitrate any and all claims against Allstate that could be brought in a court including, without limitation, all claims arising directly or indirectly from your employment or termination. This Agreement includes, without limitation, claims under federal, state, and/or local statutes, regulations, ordinances, and/or common law. This Agreement is governed by the Federal Arbitration Act. Allstate agrees to arbitrate any and all claims against you.

*Id.* at Section 1. The MAA further provides:

> **Waiver of jury trial.** If any court determines for any reason that this arbitration agreement is not binding, or otherwise allows any litigation in court regarding a claim covered by this Agreement, you and Allstate expressly waive any and all rights to a trial by jury.

*Id.* at Section 4.

The MAA further contains the following two statements, which are set out in bold in the MAA:

> **Allstate and you, on behalf of you, your heirs, administrators, executors, successors, and assigns (together referred to as "you" or "your") agree pursuant to this Mutual Arbitration Agreement ("Agreement") to arbitrate covered disputes in lieu of litigating in court.**

*Id.* at 1, and:

> **After having carefully reviewed this Agreement, I knowingly and freely agree to this mutual Agreement to arbitrate claims, which otherwise could have been brought in court. I affirm that I have had sufficient time to read and to understand the terms of this Agreement and that I have been advised of my right to seek legal counsel regarding the meaning and effect of this Agreement prior to signing. By issuing this Agreement, Allstate agrees to be bound to its terms without any requirement that it sign this Agreement.**

*Id.* at 3.

### III. ELECTRONIC SIGNING

National General uses an electronic human resources record keeping system called Workday, which employees use to complete the MAA and other onboarding work documents. Only the employee has access to this information and can execute documents. Newly hired employees are fully in control of the onboarding process and view and sign various forms at their own pace. It is not a guided process, and no one advances the system for the employee nor clicks or selects items for the employee. All new hires at National General are required to sign the MAA as a condition of work. An employee's execution of the MAA is captured electronically by

Workday and an Excel spreadsheet is created and that memorializes the time and date of execution of the MAA. *See* Declaration of Ly at ¶¶ 6-7, 11, and 15-17.

Through the Declaration of Ly and the copy of the Workforce document attached thereto, National General shows that Plaintiff first electronically signed and acknowledged a MAA when she first began her employment on January 10. 2022, and then again electronically signed and acknowledged an updated MAA on January 4, 2023. No one at National General would have had access to Plaintiff's account or have been able to access documents on her behalf. *See* Declaration of Ly at ¶¶ 6, 9-10, 12, and 15-17; Exhibit B.

### IV. LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*, allows parties to agree that certain disputes between them will be decided by an arbitrator rather than by a court and provides that an agreement to arbitrate falling under the statute "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section embodies "a liberal federal policy favoring arbitration." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24). The principal purpose of the FAA is to ensure the enforcement of private arbitration agreements according to their terms; the broader purpose of allowing parties to submit grievances to arbitration is to facilitate "efficient, streamlined procedures tailored to the type of dispute" at issue. *Id.* at 344 (citations omitted); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation."). Thus, there is generally a strong presumption in favor of arbitration under the FAA. *Morrison v. Circuit*

6

*City Stores, Inc.*, 317 F.3d 646, 652-53 (6th Cir. 2003). Despite the liberal federal policy favoring arbitration agreements, however, arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which [he or she] has not agreed so to submit." *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also GGNSC Louisville Hillcreek, LLC v. Est. of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019) ("An agreement to arbitrate is fundamentally a matter of consent.").

Section 4 of the FAA permits a defendant to motion the Court to enforce an arbitration agreement and to compel arbitration of a plaintiff's claims.[3] *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 837 (6th Cir. 2021). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). *See Stout*, 228 F.3d at 714 ("When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue.").

---

[3] Although National General refers Section 3 of the FAA as a basis for its motion, *see* Motion at 1, National General does not actually seek a stay of this lawsuit pending arbitration, which is the only remedy provided by Section 3. *See Boykin*, 3 F.4th at 836-37. Instead, it seeks to dismiss the lawsuit and compel arbitration, which is akin to a request made pursuant to Section 4 of the FAA. *Id.* at 837. Because National General also references Section 4 as a basis for its motion and specifically seeks to dismiss and compel arbitration, the Court views the pending motion as seeking relief only under Section 4. As such, the Supreme Court's recent decision in *Smith v. Spizzirri*, 601 U.S. 472 (2024), that a Court must stay and not dismiss a case if a motion seeks a stay under Section 3, is not applicable. *See Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 617 (7th Cir. 2024) (*Spizzirri*'s holding does not apply to Section 4).

7

Although a motion to compel arbitration under the FAA is a motion that is distinct from a motion brought under Rule 12 or Rule 56 of the Federal Rules of Civil Procedure, it is a motion that should be treated similarly to a motion for summary judgment under Rule 56 in its manner of review. *Boykin*, 3 F.4th at 838. The party seeking to compel arbitration bears the initial duty to present evidence that would allow a trier of fact to find that the parties entered into a contract to arbitrate. *Id.* at 839. If the movant does that, burden shifts to the non-movant to place the validity of the agreement at issue. *Id.; Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 404 (6th Cir. 2025). If the non-movant presents evidence putting the making of the arbitration contract "in issue," the Court must proceed to trial to resolve the question. *Boykin*, 3 F.4th at 837 (citing 9 U.S.C. § 4). If the Court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration. *Id.* "The question whether the party opposing arbitration has put the making of the arbitration contract 'in issue' looks a lot like the question whether a party has raised a 'genuine issue as to any material fact.'" *Id*. at 838. To establish a genuine issue, the non-movant must present "'specific facts, as opposed to general allegations,' that would allow a rational trier of fact to find" that the required elements of a contract are lacking. *Id.* at 839.[4]

---

[4] National General brings its motion under Federal Rules 12(b)(1) and 12(b)(6). However, neither Rule generally provides a basis for bringing a motion to compel arbitration. *See Boykin*, 3 F.4th. at 838; *Hazlett v. Fam. Dollar Stores of Tennessee, Inc.*, No. 3:20-CV-00804, 2021 WL 663665, at *5 (M.D. Tenn. Feb. 19, 2021) (finding that neither Rule 12(b)(1) or Rule 12(b)(6) applied to a motion seeking to compel arbitration). Further, neither Rule specifically applies to this case given that the Court has subject matter jurisdiction over Plaintiff's underlying federal, statutory claims and given that the motion relies upon matters that are outside the pleadings. Nonetheless, the form of the motion is not significant given the clear directive from the Sixth Circuit that such a motion should be reviewed in a manner similar to a motion for summary judgment.

In reviewing whether the evidence presented creates a genuine question of material fact such that a finder of fact could conclude that no valid agreement to arbitrate exists, the Court reviews the facts in the light most favorable to the non-movant. *Great Earth Companies, Inc., v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Any doubts regarding arbitrability, however, must be resolved in favor of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)); *See Great Earth*, 288 F.3d at 889 ("[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.").

## V. ANALYSIS

### A. Motion to Dismiss and to Compel Arbitration

After a review of the parties' filings, the Court finds that the motion to dismiss and to compel arbitration should be granted. The MAA is a valid arbitration agreement that was entered into by Plaintiff and should be enforced. Plaintiff's arguments against enforcement of the MAA are unpersuasive and fail to rebut the request by National General to compel arbitration of Plaintiff's claims.

As noted *supra*, the Court's review of the request to compel arbitration is narrow and is limited to determining whether the parties made an agreement to arbitrate and whether that agreement covers the claims at issue. *Javitch*, *supra*; *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561 (6th Cir. 2008). In opposing National General's motion, Plaintiff does not contend that her statutory employment claims are not covered by the MAA or that they are otherwise not subject

9

to arbitration,[5] and she directs her objection to compelled arbitration only to the question of whether the MAA is an enforceable agreement.

Whether a valid agreement to arbitrate exists is determined by state law. 9 U.S.C. § 2; *GGNSC Louisville Hillcreek, LLC v. Est. of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019). Although neither party has addressed what state law applies to this case, the Court proceeds based upon the presumption that Tennessee law applies. Under Tennessee law, "an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced." *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 904 (Tenn. Ct. App. 2009) (quoting *Thompson v. Hensley*, 136 S.W.3d 925, 929–30 (Tenn. Ct. App. 2003)).

There is a general presumption that a party is bound by a signed contract expressing an agreement because both parties have a duty to learn a contract's contents before signing, *see Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156–57 (Tenn. Ct. App. 1993), and a party's signature to a contract suffices to show assent. *Ron Kirby Auction & Realty, Inc. v. Arney*, 1990 WL 91141, at *3 (Tenn. Ct. App. July 5, 1990) ("Affixing a signature to a contract is a common mode of communicating assent."). Evidence of assent through a signature applies equally to electronic signatures under Tennessee law. *See* Tenn. Code Ann. § 47-10-107(a); *Lewis v. Hall Mgmt. Grp.*, No. 3:23-CV-00896, 2024 WL 3857331, at *6 (M.D. Tenn. Aug. 16, 2024) (Richardson, J.);

---

[5] Plaintiff's claims are clearly covered by the language of the MAA, which requires arbitration of all claims arising from Plaintiff's employment, including federal, statutory claims. It is well settled that claims brought under the ADA, Title VII, and FMLA may be subject to mandatory arbitration. *See Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F.App'x 482, 487 n.1. (6th Cir. 2008) ("The Supreme Court has made clear that statutory rights, including the right to sue for employment discrimination, may be subject to mandatory arbitration.").

10

*Carignan v. Travel + Leisure Co.*, 2022 WL 20086779, at *5 (E.D. Tenn. Dec. 13, 2022). Sufficient consideration for an arbitration contract exists when both parties agree to be bound by the requirement of arbitration. *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 358 (Tenn. Ct. App. 2001); *McCray v. Universal Health Servs.*, No. 3:20-CV-00391, 2020 WL 4207648, at *6 (M.D. Tenn. July 22, 2020) (mutuality of promises to resolve disputes through arbitration constitutes sufficient consideration for arbitration agreement).

Through the declaration of Rebecca Ly and the attachments thereto, National General has explained the use of the Workday system and the electronic signature process, has set forth evidence of Plaintiff's electronic acknowledgement and signing of the MAA, and has provided the MAA and its terms. As the party that is moving to compel arbitration, National General has met its initial burden of presenting some evidence that would allow a trier of fact to find that a contractual agreement existed that requires arbitration of Plaintiff's claims. *See Townsend v. Pinewood Soc., LLC*, No. 3:24-CV-00003, 2024 WL 1642790, at **4-5 (M.D. Tenn. Apr. 16, 2024) (Richardson, J.) (finding that evidence from the defendant employer of its electronic signature system was "clearly sufficient" for the defendant to meet its burden of showing the existence of an arbitration agreement); *Gnoth by & through Gnoth v. Victorian Square, LLC*, 2023 WL 2561781, at *4 (E.D. Tenn. Mar. 17, 2023) ("Defendants have offered a signed arbitration agreement; therefore, they have met their burden demonstrating that an arbitration contract exists.").

The burden then shifts to Plaintiff to "present 'specific facts, as opposed to general allegations,' that would allow a rational trier of fact to find that [she] did not acknowledge the agreement." *Boykin*, 3 F.4th at 839. Essentially, Plaintiff must put forth evidence that is sufficient

11

to raise an issue as to the formation or enforceability of the arbitration agreement. *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). Although Plaintiff disputes "the circumstances, timing, and voluntariness" of the execution of the MAA, *see* Plaintiff's Declaration at ¶ 10, the Court find that that Plaintiff has not met her burden.

First, and significantly, Plaintiff does not actually declare in an affirmative manner that she did not electronically sign the MAA through the Workday system. Although Plaintiff declares that she does not "recall being presented with an arbitration agreement as a standalone document, nor do I recall affirmatively agreeing to arbitrate employment-related disputes," *see* Plaintiff's Declaration at ¶ 10, these statements about a lack of recollection are not sufficient to create a genuine factual dispute. "A party . . . cannot expect to obtain a trial under § 4 simply by testifying that the party does not 'remember' signing an arbitration contract or receiving information about arbitration." *Boykin*, 3 F.4th at 840. *See also Hammond v. Floor and Decor Outlets of America*, No. 3:19-cv-1099, 2020 WL 6459642, at *6 (M.D. Tenn. Nov. 3, 2020) (collecting cases and concluding that employee's statement that he "do[e]s not believe" and "do[es] not recall" entering and reviewing arbitration agreement were insufficient to create issue of fact on contract formation); *Byars v. Dart Transit Co.*, 414 F.Supp.3d 1082, 1094 (M.D. Tenn. 2019) (court rejected the plaintiff's argument that arbitration agreement should be invalidated because she did not remember signing it). There is simply nothing before the Court that puts at issue Plaintiff's electronic acknowledgement and signing of the MAA.[6] Plaintiff provides no legal authority for a conclusion

---

[6] In this sense, the instant case is distinguishable from both *Boykin* and *Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 798 (6th Cir. 2023), because the plaintiffs in those cases challenged motions to compel arbitration with unequivocable denials that they had either signed the arbitration agreement or had even seen the arbitration agreement let alone signed it.

12

that she was required to have been presented with a "standalone" copy of the MAA, and her qualification that she does not recall being presented with a "standalone" arbitration agreement actually suggests that she did, in fact, view an electronic version of the MAA.

Plaintiff also fails to create an issue by her allegations that arbitration was not "explained to her in any meaningful way," that she "was never informed that arbitration would waive my right to bring claims in court, waive my right to a jury trial, or require me to resolve statutory employment and civil rights claims in a private forum," or that she "[does] not recall being given any opportunity to review, negotiate, opt out of, or ask questions about arbitration." *See* Plaintiff's Declaration at ¶¶ 5-6 and 8. Again, Plaintiff does not actually declare in an affirmative manner that she was not presented with the MAA for review through the Workday system, and her lack of recollection does not create a genuine issue of fact. *Boykin*, *supra; Hammond*, *supra*; *Byars*, *supra*. Furthermore, the MAA itself specifically and clearly sets out the impact of agreeing to arbitration, the procedures for arbitration, and that the parties are giving up their ability to pursue claims through litigation in court. Parties are presumed to have read the contract that they sign, *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011), and an employee who signs an arbitration agreement that specifically states that the employee will resolve any employment claims in arbitration knowingly and voluntarily waives her right to a jury trial. *Smiley v. Am. Fam. Care, Inc.*, No. 3:18-CV-00994, 2019 WL 3231366, at *4 (M.D. Tenn. July 18, 2019) (Richrdson, J.). There is no requirement that Plaintiff have been provided with a face-to-face or personal explanation of the MAA. *Id.* at *4 (rejecting the plaintiff's argument that she did not knowingly and voluntarily waive her right to a jury trial because the arbitration agreement was not read to her). Nor has Plaintiff affirmatively declared that she had questions about the MAA or sought to

13

have the MAA explained to her, but that National General refused to answer her questions or provide additional information to her.

Plaintiff also seeks to invalidate the MAA by declaring that she was suffering from serious medical conditions and significant stress, on intermittent medical leave, and actively seeking workplace accommodations related to her medical conditions at the time she is alleged to have executed the MAA and that these conditions "affected [her] ability to process, understand, and meaningfully consent to any alleged agreement purporting to waive my legal rights." *See* Plaintiff's Declaration at ¶¶ 3-4 and 11-12. Although not clearly explained, Plaintiff appears to argue that she lacked the capacity to enter into the MAA because of her medical conditions and because of stress. However, the mere fact that a person suffers from medical conditions or stress does not prevent them from entering into contracts. To avoid a contract based on this type of argument, there must be evidence of incompetency or mental incapacity such that the person was unable to understand, in a reasonable manner, the nature and consequences of executing the contract or unable to act in a reasonable manner in relation to the transaction. *See Est. of Czoka v. Life Care Ctr. of Gray*, 2021 WL 1814079, at *8 (Tenn. Ct. App. May 6, 2021); *Reagan v. Kindred Healthcare Operating, Inc.*, 2007 WL 4523092, at *18 (Tenn. Ct. App. Dec. 20, 2007). Plaintiff's declaration falls far short of satisfying this showing.

Finally, Plaintiff contends that the MAA is both procedurally and substantively unconscionable, arguing that:

> Plaintiff was a rank-and-file employee dealing with serious medical conditions, on intermittent leave, and actively seeking accommodations. Arbitration was not explained, highlighted, or meaningfully disclosed. Plaintiff was not informed she was waiving her right to a jury trial or access to court, and the agreement was imposed through a corporate electronic system controlled by Defendant.

14

*See* Response at 7. Under Tennessee law, determining whether a contract is unconscionable has "two components: (1) procedural unconscionability, which is an absence of the meaningful choice on the part of one of the parties and (2) substantive unconscionability, which refers to contract terms which are unreasonably favorable to the other party." *Philpot v. Tennessee Health Mgmt., Inc.*, , 579 (Tenn. Ct. App. 2007). While there is no precise definition of what is unconscionable, it is a narrow exception to contract enforcement and has been defined in general as occurring:

> when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.

*Taylor v. Butler*, 142 S.W.3d (Tenn. 2004) (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn.Ct.App.1984)).

The Court finds that Plaintiff's unconscionability argument is essentially a rehashing of her preceding arguments, which the Court has found to be insufficient to rebut the request to compel arbitration. Plaintiff does not point to any specific provision of the MAA that is so oppressive or unreasonable that it would render the MAA substantively unconscionable. The Court's review of the MAA shows it to be a fairly standard employment arbitration agreement with terms that are clear, readily understandable, applicable to both parties, and reasonable. Such an arbitration agreement is not substantively unconscionable. *See Elliot v. NTAN, LLC*, No. 3:18-CV-00638, 2018 WL 6181351, at *5 (M.D. Tenn. Nov. 27, 2018) ("The Sixth Circuit has held that an arbitration agreement in the employment context is not so unreasonable if the terms are mutual and the agreement is not aimed solely at limiting the liability of the employer.").

Plaintiff's procedural unconscionability argument appears to be premised upon a contention that she was a "rank-and-file" employee who was presented the MAA via the electronic

15

Workday system controlled by National General. The Court finds that this assertion fails to support a finding of procedural unconscionability. Without more, the mere fact that an employer presents an employee with an arbitration agreement, even if it is required as a condition of employment, does not render such an agreement procedurally unconscionable. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 977 (6th Cir. 2007) (employer's arbitration agreement was not unconscionable and was enforceable); *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 504-05 (6th Cir. 2004) (employee failed to show that employer's arbitration agreement was unconscionable); *Elliot*, 2018 WL at *5 (the plaintiffs' assertion of an "imbalance of power" between themselves and their employer was not sufficient under the law to establish procedural unconscionability and the plaintiffs failed to present evidence that suggested that they were unable to understand the terms of the arbitration agreement); *Kyles v. TRG Customer Sols., Inc.*, No. 3-14-1674, 2014 WL 6908969, at *3 (M.D. Tenn. Dec. 5, 2014) (Campbell, J.) (employee's claim that arbitration agreement was unconscionable failed, in part, because the employee failed to show that the parties' unequal bargaining power was "so manifest as to shock the judgment of a person of common sense").

In the end, the Court finds that Platiniff has not met her burden of putting the MAA at issue such that arbitration should not be compelled. Given the lack of evidence on Plaintiff's part that would tend to show that the MAA was not executed by her or that it should otherwise not be enforced, any doubts regarding arbitrability should be resolved in favor of arbitration. *See Glazer*, 394 F.3d at 451; *Great Earth*, 288 F.3d at 889. As stated by the Sixth Circuit in upholding an

16

arbitration agreement between an employee and employer, "[in] the absence of evidence that assent to the arbitration agreement was procured though unfair means or that the agreement itself was substantively unfair, courts should enforce mandatory arbitration agreements on the same basis as any other agreement that employers require as a condition of employment." *Seawright*, 507 F.3d at 979.

## B. Plaintiff's Motion for Limited Discovery

Plaintiff's motion for limited discovery was filed after her response to the motion to dismiss and to compel arbitration and after the reply filed by National General. The Court's briefing order specifically directed that no sur-reply from Plaintiff would be permitted. Thus, to the extent that Plaintiff's motion presents continued arguments in rebuttal to the motion to dismiss and to compel arbitration, such arguments are not properly before the Court and will not be considered.

A party "who adequately puts the formation of an arbitration contract in issue may request discovery on that contract-formation question." *Boykin*, 3 F.4th at 841. In the instant case, the Court has found that Plaintiff's declaration statements are not adequate to put the validity of the MAA at issue. In fact, the Court finds that this is not a close question. In such a scenario, the Court finds no basis for further delaying the compelled arbitration of Plaintiff's claims by permitting a time period for her to engage in limited discovery from National General about the Workday system and the MAA.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that:

(1) Plaintiff's motion for limited discovery (Docket Entry No. 19) be **DENIED**; and,

17

(2) the motion to dismiss and to compel arbitration filed by Defendant National General Insurance Company (Docket Entry No. 14) be **GRANTED** and that this action be **DISMISSED WITHOUT PREJUDICE**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2) and Local Rule 72.02(a); *see also* Fed. R. Civ. P. 5(b)(2)(C) (a paper is served by mailing it to the person's last known address and service is complete upon mailing) and Fed. R. Civ. P. 6(d) (whenever a party must act within a specific time after being served and service is made by mail, 3 days are added after the period would otherwise expire). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Fed. R. Civ. P. 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

18